## In The United States District Court
## For The Eastern District Of Michigan

| | |
|---|---|
| Commodity Futures Trading Commission,<br>          Plaintiff,<br><br>vs.<br><br>Charles G. Mady,<br>          Defendant,<br>and<br><br>Mady Funding Company LLC,<br>Mady Futures, Inc.,<br>          Relief Defendants. | Civil Action No:<br><br>**02-72394**<br>ARTHUR J. TARNOW<br><br>MAGISTRATE JUDGE PEPE<br><br>Complaint For Injunctive And<br>Other Equitable Relief And<br>Civil Monetary Penalties Under<br>The Commodity Exchange Act |

### I. Summary

1.     From at least October 1999 to the present ("relevant time period"), Charles G. Mady ("Defendant") has solicited and accepted customer funds for use in trading in commodity futures and commodity options. He has misappropriated some of those funds and has issued false account statements that misrepresented the profitability of his trading. He also has acted as a commodity pool operator ("CPO") without the benefit of registration and has defrauded at least one commodity pool participant. Finally, Defendant has commingled funds of the pool with his own funds and the funds of at least one other person.

2.     Specifically, Defendant has engaged, is engaging, or is about to engage in acts or practices which violate the anti-fraud sections of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2001), and Commission Regulations thereunder, 17 C.F.R. §§ 1 *et seq.* (2002). Defendant has violated Sections 4c(b) and 4o(1) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10, 17 C.F.R. § 33.10, by misappropriating customer funds and by

making false reports and statements to at least one customer in connection with commodity options transactions and by defrauding at least one commodity pool participant.

3.      Defendant has also engaged, is engaging, or is about to engage in acts or practices which violate Section 4m(1) of the Act, 7 U.S.C. § 6m(1), by failing to register with the Commission as a CPO.

4.      Finally, Defendant has violated Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c), by commingling the funds of pool participants with his personal funds and with the funds of at least one other person.

5.      Unless restrained and enjoined by this Court, Defendant is likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices, as more fully described below.

6.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commodity Futures Trading Commission ("Commission" or "CFTC") brings this action to enjoin such acts and practices, prevent the dissipation of assets, and compel compliance with the provisions of the Act. In addition, the Commission seeks civil penalties, an accounting, restitution, disgorgement and such other equitable relief as the Court may deem necessary or appropriate under the circumstances.

## II.  Jurisdiction And Venue

7.      This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

8.      Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C.

§ 13a-1(e), in that the Defendant is found in, inhabits, and transacts business in this District, and

the acts and practices in violation of the Act have occurred, are occurring, or are about to occur

within this District.

### III.  The Parties

9.      Plaintiff Commission is an independent federal regulatory agency that is charged

with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et*

*seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

10.     Defendant Charles G. Mady is 31 years old and resides in Northville, Michigan.

He was admitted to membership in the State Bar of Michigan in 1997 and is a sole practitioner

attorney with an office in Livonia, Michigan.  Defendant has never been registered with the

Commission in any capacity.

11.     Relief Defendant Mady Funding Company, LLC ("the LLC") is a Michigan

limited liability company that was formed on August 7, 2001.  Its registered agent is Charles G.

Mady and its address is the same as Defendant's law office.  The LLC has no employees.  The

LLC has never been registered with the Commission in any capacity.

12.     Relief Defendant Mady Futures, Inc. is a Michigan corporation that was formed

on October 1, 1999.  Its registered agent is Charles G. Mady and its address is the same as

Defendant's law office.  Mady Futures, Inc. has no employees.  Mady Futures, Inc. has never

been registered with the Commission in any capacity.

3

## IV. Facts

A.   Statutory Background

13.     A "commodity pool" is defined in Commission Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1), as any investment trust, syndicate or similar form of enterprise engaged in the business of investing its pooled funds in trading commodity futures and/or commodity options.

14.     A "commodity pool operator" is defined in Section 1a(5) of the Act, 7 U.S.C. § 1(a)(5), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

15.     A "participant" is defined in Commission Regulation 4.10(c), 17 C.F.R. § 4.10(c), as any person who has any direct financial interest in a commodity pool.

B.   The Customer Transactions

16.     In early 2000, a Detroit businessman ("Customer") was told that Defendant had been successful trading in the stock market. In April or May 2000, Customer interviewed Defendant and later entered into a business arrangement with him under which Customer would give money to Defendant for his use in trading commodity futures and commodity options, at Defendant's discretion, on Customer's behalf. From May 2000 to June 2000, Customer gave Defendant $250,000 for this purpose.

17.     In January 2001, Defendant returned the $250,000 Customer had given him along with $52,500 that Defendant claimed was trading profits.

18.     As described in paragraphs 19 to 40 below, between February 2001 and January 2002, Customer transferred a total of $6 million to Defendant for Defendant's use in trading

4

commodity futures and commodity options on Customer's behalf. During the time period February 2001 through April 2002, Defendant transferred approximately $4,833,500 into his personal trading account at Lind-Waldock, a registered futures commission merchant ("FCM") to trade options on S&P 500 Stock Price Index futures. He incurred net trading losses in excess of $2.5 million during that period of time. It appears that Mady misappropriated approximately $1.2 million of Customer's funds.

19.     In February 2001, Defendant and Customer established a joint bank account ("Joint Account"). On February 9, 2001, Customer transferred the first of six million dollars from his personal bank account to the Joint Account solely for Defendant's use in trading commodity futures and commodity options on his behalf. Customer provided the money to Defendant in reliance on his past purported record of generating profit.

20.     Beginning in February 2001, Defendant created and regularly provided Customer and his accountant with documents that Defendant represented to be statements reflecting trading activity in Defendant's futures account at Lind-Waldock. Defendant provided the statements pursuant to Customer's request that he be allowed to monitor Defendant's futures trading activity. Defendant represented to Customer that it was Customer's money in the Lind-Waldock account although the account was in Defendant's name. The statements represented that Defendant was trading options on S&P 500 Stock Price Index futures exclusively.

21.     The statements that Defendant submitted displayed the words "Account Statement" on the upper left side of the page. Words and numbers purporting to represent the date and time that the statement had been generated appeared on the lower left side of the page. The letters "NLV" appeared on the upper right side of the page, just to the right of the number to which they referred.

5

22.     Defendant told Customer that NLV stood for "net liquidation value" which represented the actual cash value of the account.  Relying on Defendant's representation about the nature of the NLV, Customer used that number to determine Defendant's level of success in trading commodity futures and commodity options with his money.

23.     On May 17, 2001, Defendant submitted an account statement to Customer's accountant.  According to the statement, the NLV of the account that day was $2,401,815.  The account's NLV at that time was actually $446,457.09.

24.     On May 24, 2001, based on Defendant's apparent profitable trading, as reflected on the statements the Customer was receiving, Customer transferred a second $1 million to the Joint Account solely for Defendant's use in trading commodity futures and commodity options on his behalf and in reliance on the NLV that appeared on the account statement Defendant had submitted.

25.     In June and July 2001, Defendant submitted two more false account statements, both of which vastly overstated the NLV of the Lind-Waldock account.  According to the June 27 statement, the NLV of the account that day was $2,375,149.  The account's NLV at that time was actually $375,149.01.  According to the July 11 statement, the NLV of the account that day was $2,704,998.  The account's NLV at that time was actually $300,146.51.

26.     In August 2001, Defendant and Customer formed Mady Funding Company, LLC.  Customer was the LLC's agent-in-fact and Defendant was its manager.  They were the only officers or members.

27.     In accordance with the LLC's written operating agreement ("the Agreement"), Customer contributed $4 million in capital to the company and Defendant contributed $10.  The Agreement specified that the $2 million that Customer had given to Defendant in February 2001

6

and in May 2001 would be considered part of the $4 million and that Customer would provide an additional $2 million upon the formation of the LLC. Under the Agreement, Defendant was to trade exclusively for Customer.

28.     Pursuant to the Agreement, Customer transferred the additional $2 million to Defendant solely for his use in trading commodity futures and commodity options on behalf of the LLC and in reliance on the false account statements that Defendant had submitted.

29.     Defendant told Customer that he would deposit the funds into his trading account at Lind-Waldock and that the money would be used only to trade commodity futures and commodity options on behalf of the LLC.

30.     Per the Agreement, Customer's return on his investment would be based on an annualized return of 25% of the principal amount currently invested, or $83,333.33 per month from September 2001 through December 2001 (on a principal investment of $4 million), and $104,167 per month from January 2002 to April 2002 (on a principal investment of $5 million). At the end of each quarter, after Customer's monthly distributions had been made, Defendant was to receive a distribution of 40% on an annualized basis (10% per quarter) of the LLC's income. At the end of each 12 month period, any income remaining after the monthly distributions to Customer and the quarterly distributions to Defendant were made was to be divided evenly between Customer and Defendant.

31.     Defendant made monthly distributions in the amount of $83,333 to Customer in September 2001, October 2001, and November 2001.

32.     Between the date that the LLC was formed and November 25, 2001, Defendant submitted to Customer eight more false account statements, each of which vastly overstated the

7

NLV of the Lind-Waldock account. According to the November 9 statement, the NLV of the account that day was $4,381,570. The account's NLV at that time was actually $61,268.92.

33.     In November 2001, Customer and Defendant modified the Agreement to reflect Customer's contribution of another $1 million to the LLC on November 25, 2001, making Customer's total investment now $5 million. Customer provided this money to Defendant solely to trade commodity futures and commodity options on behalf of the LLC and in reliance on the NLV that appeared on the statements Defendant provided.

34.     Between November 25, 2001, and January 25, 2002, Defendant submitted six more false account statements, each of which vastly overstated the NLV of the Lind-Waldock account. According to the January 16, 2002 statement, the NLV of the account that day was $5,622,000. The account's NLV at that time was actually $145.31.

35.     In January 2002, Customer and Defendant modified the Agreement to reflect Customer's contribution of another $1 million to the LLC on January 25, 2002, making Customer's total investment now $6 million. Customer provided this money to Defendant solely to trade commodity futures and commodity options on behalf of the LLC and in reliance on the NLV that appeared on the statements he provided.

36.     Defendant made monthly distributions to Customer in January 2002, February 2002, and April 2002. The distributions were in various amounts and totaled $500,001.

37.     In late April 2002, Defendant told Customer that he no longer wished to trade in the futures markets on his behalf or on behalf of the LLC. Defendant stated that he would soon return the $6 million that Customer had given to him along with the profits to which Customer was entitled under the Agreement.

8

38.    Defendant continued to submit false account statements to Customer until May 20, 2002.  Defendant submitted a total of 27 false account statements between May 17, 2001, and May 20, 2002.

39.    Contrary to the NLV figures represented in the false account statements, which purported to show profitable trading by Defendant, first on behalf of Customer and then on behalf of the LLC, Defendant incurred net trading losses of $3,009,381 in the Lind-Waldock account between January 2001 and April 2002.  These losses were not disclosed in the false account statements and, in fact, the May 20, 2002, account statement showed an NLV exceeding $6,000,000 when the actual NLV was $850.

40.    To date, the only funds Defendant has returned to Customer, other than the $52,500 described in paragraph 17, are the monthly distributions described in paragraphs 31 and 36.  The distributions described in paragraphs 31 and 36 total $750,000.

C.    The Mady Fund Commodity Pool

41.    Beginning in October 1999, Defendant solicited and accepted funds from at least fifteen individuals for the purpose of trading commodity futures.  He pooled the funds and referred to that pool as the "Mady Fund."  On information and belief, during the relevant time period, total gross capital contributions to the Mady Fund exceeded $200,000.

42.    Defendant transferred the pooled funds into futures trading accounts he held in his own name at several different FCMs, including the Lind-Waldock account into which Defendant had transferred a portion of Customer's funds.  Defendant traded options on S&P 500 futures using pooled funds in his personal account at Lind-Waldock prior to and during the twelve-month period from May 2001 to May 2002.  Defendant also traded options on S&P 500 futures using Customer's funds in that same account during the same time period.

9

43.     By depositing the pooled funds into his personal trading account, Defendant commingled pool funds with his personal funds.

44.     Defendant made all of the trading decisions for the Mady Fund and placed all of the trades on behalf of the pool participants.

45.     Defendant purported to allocate trading profits and losses among the participants on a *pro rata* basis and reported those profits and losses to the participants on statements he prepared on letterhead that read "The Law Office of Charles G. Mady."

## V.  Violations of the Commodity Exchange Act

### Count I

#### Violations Of Section 4c(b) of the Act and Commission Regulation 33.10: Options Fraud and Misappropriation

46.     Paragraphs 1 through 45 are realleged and incorporated herein.

47.     From at least May 2000 to the present, Defendant violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulations 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c), in that he cheated or defrauded or attempted to cheat or defraud or deceived or attempted to deceive Customer by misappropriating Customer's funds entrusted to Defendant for trading commodity futures and commodity options.

48.     From at least May 2000 to the present, Defendant violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10(b), 17 C.F.R. § 33.10(b), in that he made false reports and false statements to Customer concerning the profitability of Defendant's trading in the Lind-Waldock account.

49.     Defendant's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10, 17 C.F.R. § 33.10, as set forth in paragraphs 47 and 48, were

10

committed in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, commodity options transactions.

50.     Each act of misappropriating Customer funds and making false reports or false statements that occurred during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C.§ 6c(b) and Commission Regulation 33.10, 17 C.F.R. § 33.10.

## Count II

### Violations of Section 4o(1) of the Act:
### Commodity Pool Fraud

51.     Paragraphs 1 through 45 are realleged and incorporated herein.

52.     During the relevant time period, Defendant acted as a CPO in that he has engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, has solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

53.     From at least May 2000 through the present, Defendant has violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1), in that he directly or indirectly employed or is employing a device, scheme, or artifice to defraud at least one commodity pool participant, or has engaged or is engaging in transactions, practices or a course of business which operated as a fraud or deceit upon at least one commodity pool participant by means of the acts and practices described in paragraphs 16 through 45.

54.      In connection with such conduct, Defendant used or is using the mails and other means or instrumentalities of interstate commerce, directly or indirectly, to engage in business as a CPO.

55.      Each act of misappropriating Customer funds and making false reports or false statements that occurred during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

## Count III

## Violations of Section 4m(1) of the Act:
## Failure To Register as a Commodity Pool Operator

56.      Paragraphs 1 through 45 are re-alleged and incorporated herein.

57.      During the relevant time period, Defendant has acted as a CPO, in that he has engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, and have solicited, accepted or received funds, securities or property from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

58.      In connection with such conduct, Defendant used or is using the mails and other means or instrumentalities of interstate commerce, directly or indirectly, to engage in business as a CPO.

59.      Defendant engaged and continues to engage in these activities without the benefit of registration, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

60.      Each use of the mails or any means or instrumentality of interstate commerce in connection with the business of CPO without proper registration during the relevant time period,

12

including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

## Count IV

### Violations of Commission Regulation 4.20(c): Commingling of Property by a Commodity Pool Operator

61.     Paragraphs 1 through 45 are re-alleged and incorporated herein.

62.     Pursuant to Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c), no CPO may commingle the property of any pool that it operates or that it intends to operate with the property of any other person.

63.     Defendant violated Regulation 4.20(c), 17 C.F.R. § 4.20(c), by commingling the funds of the Mady Fund with Defendant's own funds.

64.     Each act of commingling funds of the Mady Fund with Customer's funds, the Defendant's own funds, or the funds of other persons during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c).

## Count V

### Disgorgement of Assets from the Relief Defendants

65.     Paragraphs 1 through 45 are re-alleged and incorporated herein.

66.     Defendant has committed a fraud upon Customer in connection with the purchase and sale of commodity options as alleged herein.

67.     During the relevant time period, Mady Funding Company LLC and Mady Futures Inc., the Relief Defendants herein, may have received funds or otherwise benefited from funds

which are directly traceable to the funds obtained from Customer through Defendant's fraudulent schemes.

68.     The Relief Defendants have no legitimate interest in the funds or the value of the benefits they may have received as a result of Defendant's fraudulent schemes involving Customer.

69.     The Relief Defendants will be unjustly enriched if they are not required to disgorge the funds or the value of the benefits they may have received as a result of Defendant's fraudulent schemes.

70.     The Relief Defendants should be required to disgorge the funds or the value of the benefits they may have received which are traceable to Defendant's fraudulent schemes.

## VI.  Relief Requested

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.      Find Defendant liable for violating Sections 4c(b), 4o(1) and 4m(1) of the Act, 7 U.S.C. §§ 6c(b), 6o(1), and 6m(1); and Commission Regulations 4.20(c) and 33.10, 17 C.F.R. §§ 4.20(c) and 33.10;

B.      Enter an order of permanent injunction enjoining Defendant and all persons insofar as they are acting in the capacity of his agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

> 1.      Engaging in conduct in violation of Sections 4c(b), 4o(1) and 4m(1) of the Act, 7 U.S.C. §§ 6c(b), 6o(1), and 6m(1); and Commission Regulations 4.20(c) and 33.10, 17 C.F.R. §§ 4.20(c) and 33.10;

14

2.      Directly or indirectly soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity futures or options contract;

3.      Engaging in, controlling, or directing the trading of any commodity futures or options accounts, on his own behalf or for or on behalf of any other person or entity, whether by power of attorney or otherwise;

4.      Introducing customers to any other person engaged in the business of commodity futures and options trading;

5.      Issuing statements or reports to others concerning commodity futures or options trading;

6.      Otherwise engaging in any business activities related to commodity futures or options trading; and

7.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration from the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

C.      Enter an order pursuant to Section 6c(a) of the Act restraining Defendant and Relief Defendants and all persons insofar as they are acting in the capacity of Defendant's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1.      Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of defendants, wherever located, including all such records concerning defendants' business operations;

2.      Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendant's business operations; and

15

3.      Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account held by, under the control, or in the name of the Defendant;

D.      Enter an order directing that Defendant provide the Plaintiff immediate and continuing access to his books and records, make an accounting to the Court of all of Defendants' assets and liabilities, together with all funds they received from and paid to investors and other persons in connection with commodity futures or options transactions or purported commodity futures or options transactions, including the names, addresses and telephone numbers of any such persons from whom they received such funds from October 1999 to the date of such accounting, and all disbursements for any purpose whatsoever of funds received from commodity investors, including salaries, commissions, fees, loans and other disbursements of money and property of any kind, from October 1999 to and including the date of such accounting;

E.      Enter an order requiring Defendant and the Relief Defendants to disgorge to any officer appointed or directed by the Court or directly to Customer and to the pool participants all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment interest;

F.      Enter an order requiring Defendant to make restitution by making whole Customer and each and every pool participant whose funds were received or utilized by him in violation of the provisions of the Act as described herein, including pre-judgment interest;

G.      Enter an order requiring Defendant to pay civil penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of (1) triple the monetary gain to

16

Defendant for each violation of the Act and Regulations or (2) $110,000 for each violation of the

Act and Regulations occurring between November 27, 1999, and October 23, 2000, and

$120,000 for each violation of the Act and Regulations occurring after October 23, 2000;

     H.    Enter an order requiring Defendant to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (1994); and

     I.    Enter an Order such other and further relief as this Court may deem necessary and

appropriate under the circumstances.

Date: June ___10___, 2002

Respectfully submitted,

Clifford Histed
Trial Attorney

Elizabeth M. Streit
Senior Trial Attorney

Scott R. Williamson
Acting Regional Counsel

Local Counsel:

William L. Woodard
Assistant U.S. Attorney
Eastern District of Michigan
211 Fort Street, Suite 2000
Detroit, Michigan 48226
(313) 226-9786
(313) 226-3271 (facsimile)

Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0532 (Histed)
(312) 596-0537 (Streit)
(312) 596-0520 (Williamson)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)