**CLOSED ORIGINAL**

**FILED**

NOV 0 6 2003

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Commodity Futures Trading Commission, Plaintiff, vs. Charles G. Mady, Defendant, and Mady Funding Company LLC, Mady Futures, Inc., Relief Defendants. | Civil Action No.: 02-72394<br><br>Honorable Victoria A. Roberts<br>Magistrate Judge Steven Pepe<br><br>**Consent Order of Permanent Injunction and Other Equitable Relief and a Civil Monetary Penalty Against Defendant Charles G. Mady** |



On June 11, 2002, plaintiff Commodity Futures Trading Commission ("Commission") filed a complaint against defendant Charles G. Mady ("Defendant") and against relief defendants Mady Funding Company LLC and Mady Futures, Inc. seeking injunctive and other equitable relief, and a civil monetary penalty, for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 et seq. (2001), and regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (2002). The Court entered a Consent Order of Preliminary Injunction on that same day.

## I. Consents And Agreements

To effect settlement of the matters alleged in the Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1. Consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief and a Civil Monetary Penalty Against Defendant Charles G. Mady ("Order").

2. Affirms that he has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.



3. Acknowledges service of the Summons and Complaint.

4. Admits jurisdiction of this Court over him, admits that the Court has subject matter jurisdiction over this action, and admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

5. Waives:

(a) the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as set forth below;

(b) all claims which he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Regulations, 17 C.F.R. § 148.1, et seq. (2002), relating to, or arising from, this action;

(c) any claim of double jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

(d) all rights of appeal from this Order.

6. Defendant neither admits nor denies any of the findings of fact or conclusions of law contained in this Order. Defendant does not consent to the use of this Order, or the findings of fact or conclusions of law, as any basis for any other proceeding brought by the Commission other than a proceeding brought to enforce the terms of the Order. Defendant does not consent to the use of the Order by any other person or entity in this or any other proceeding, except as set forth in Part VI, paragraph 8 of this Order. No provision of this Order shall in any way limit or impair the ability of any person, including those named in the Commission's October 22, 2003 letter to the Court-Appointed Receiver ("Commission Letter"), to seek any legal or equitable remedy against Defendant or any other person in any other proceeding. The findings of fact and conclusions of law made by this Court in this Order shall be taken as true and be given preclusive effect without further proof only for the purpose of any subsequent bankruptcy

2

proceeding filed by, or on behalf of, Defendant for the purpose of determining whether his restitution obligation and/or civil monetary penalty ordered herein are excepted from discharge. Defendant shall also provide immediate notice of any bankruptcy filed by, on behalf of, or against him in the manner required by paragraph 1 of Part VI of this Order.

7. Defendant agrees that neither he nor any of his agents or employees acting under his authority or control shall take any action or make any public statement denying, directly or indirectly, any findings of fact or conclusions of law in this Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant's right to take legal, factual or equitable positions in other proceedings to which the Commission is not a party. Defendant shall take all necessary steps to ensure that all of his agents and employees understand and comply with this agreement.

8. Defendant consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this case.

## II. Findings of Fact

The Court hereby makes the following findings of fact:

1. This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, in that Defendant is found in, inhabits, or transacts business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3. From at least October 1999 to June 2002 ("relevant time period"), Defendant acted as a commodity pool operator as defined in Section 1a(5) of the Act, 7 U.S.C. § 1a(5).

4. During the relevant time period, Defendant operated at least one commodity pool that received total gross capital contributions exceeding $200,000.

5. Defendant has never been registered as a commodity pool operator and has never sought exemption from such registration from the Commission.

6. During the relevant time period, Defendant commingled the property of a commodity pool that he operated with property of other individuals or entities.

7. From at least January 1999 through June 2002, Defendant incurred net futures trading losses exceeding $4 million. Most of these losses involved trading options on S&P 500 Stock Price Index futures which are traded at the Chicago Mercantile Exchange, a Commission-designated contract market.

8. During the relevant time period, Defendant failed to disclose his trading losses to participants in commodity pools that he operated.

9. From at least May 2001 to May 2002, Defendant created and issued to at least one individual a report that purported to show the net indebtedness owed to an investor/creditor as represented by the acronym "NLV" and that falsely reflected trading activity in Defendant's commodity futures trading account.

10. During the relevant time period, Defendant misappropriated funds belonging to commodity pool participants.

11. In connection with the conduct described above, Defendant used the mails and other means or instrumentalities of interstate commerce, directly or indirectly.

12. The totality of circumstances establishes the likelihood that unless enjoined, Defendant will continue to violate the Act and Commission regulations as alleged.

### III. Conclusions of Law

1. From at least May 2000 through June 2002, Defendant violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Commission Regulation 33.10, 17 C.F.R. § 33.10.

2. From at least May 2000 through June 2002, Defendant violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

3. During the relevant time period, Defendant violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

4. During the relevant time period, Defendant violated Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c).

### IV. Order For Permanent Injunction

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. Defendant and all persons insofar as they are acting in the capacity of his agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant who receive actual notice of such order by personal service or otherwise, are permanently prohibited from directly or indirectly:

> (a) Engaging in conduct in violation of Sections 4c(b), 4o(1) and 4m(1) of the Act, 7 U.S.C. §§ 6c(b), 6o(1), and 6m(1); and Commission Regulations 4.20(c) and 33.10, 17 C.F.R. §§ 4.20(c) and 33.10;
>
> (b) Directly or indirectly soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity futures or options on commodity futures;
>
> (c) Engaging in, controlling, or directing the trading of any commodity futures or options on commodity futures for or on behalf of any other person or entity, whether by power of attorney or otherwise;

5

(d) Introducing customers to any other person engaged in the business of commodity futures or options on commodity futures; and

(e) Issuing statements or reports to others concerning commodity futures or options on commodity futures.

2. This Court also orders, and Defendant agrees to, the Defendant's performance of the following undertakings:

(a) For ten years from the date of this Order, Defendant will not trade commodity futures or options on commodity futures on any board of trade as that term is defined in Section 1a(2) of the Act, 7 U.S.C. § 1a(2); and

(b) Defendant will never apply for registration or claim exemption from registration with the Commission in any capacity, or engage in any activity requiring such registration or exemption from registration from the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or act as a principal, agent or officer of any person registered, required to be registered, or exempted from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

## V. Order For Other Equitable Relief

IT IS FURTHER ORDERED THAT:

1. Restitution: Defendant shall be liable for restitution to investors in the amount of $8,220,860 plus post-judgment interest. Interest after the date of this Order until the restitution is paid in full shall be paid at the post-judgment interest rate set forth in 28 U.S.C. § 1961, assessed pursuant to the payment plan outlined below in paragraph 4 of this section. The Commission Letter includes the names of the investors/creditors to whom restitution shall be made pursuant to this paragraph, together with the amount of restitution payable by Defendant to each of them (not including required interest) and the pro rata distribution percentage by which each investor/creditor shall be paid. Defendant's obligation to make restitution under this paragraph shall be reduced by any amounts paid to the investors/creditors listed in the Commission Letter

pursuant to any restitution ordered in any other legal proceeding, or any voluntary payments made by Defendant to investors/creditors listed in the Commission Letter.

    2.    <u>Payment of Restitution</u>: Restitution shall be made as follows:

(a) Defendant's initial payment of restitution shall consist of the court-appointed receiver's pro rata distribution of the receivership estate to the individuals listed in the Commission Letter.

(b) Defendant agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2004. Notice to the Monitor shall be made to Daniel A. Driscoll, Executive Vice President, or his successor, in the manner outlined in paragraph 1 of Part VI of this Order.

(c) Defendant shall make annual restitution payments ("Annual Restitution Payment") according to the payment plan outlined below in paragraph 4 of this section to an account designated by the Monitor of a percentage of his adjusted gross income (as defined by the Internal Revenue Code) earned or received by him during the previous calendar year. The Annual Restitution Payment shall be made on or before July 31 of each calendar year, starting in calendar year 2004 and continuing for ten years or until his restitution amount is paid in full from any source, whichever occurs sooner.[1]

(d) Defendant shall provide the Monitor with sworn Financial Disclosure Statements and complete copies of his signed and filed federal income tax returns, including all schedules and attachments thereto (<u>e.g.</u>, IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, for the preceding calendar year, on or before May 15 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2004 and continuing for ten years or until the restitution amount is paid in full, whichever occurs first.

(e) If, during the same time period, Defendant elects to file a joint tax return, he shall provide all documents called for by this paragraph 2, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Defendant's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Defendant has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that Defendant is

---

[1] The ten-year restitution period shall run from January 1, 2003 through December 31, 2012. Restitution payments for a calendar year shall take place by July 31 of the following year. Therefore, the final restitution payments for the year 2012 will occur on or before July 31, 2013.

7

entitled to claim on the joint tax return; provided, however that Defendant may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filings required to be submitted to any state tax or revenue authority. If Defendant does not file a return, he shall provide his sworn Financial Disclosure Statement on June 30 and December 31 of each calendar year, starting on December 31, 2003 and continuing through and including June 30, 2013. The Financial Disclosure Statements shall provide:

> 1. A true and complete itemization of all of Defendant's rights, title and interest in any asset, wherever, however and by whomever held;
>
> 2. An itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of Defendant over the proceeding six-month interval; and
>
> 3. A detailed description of the source and amount of all of Defendant's income or earnings, however generated.

(f) Based on the information contained in Defendant's tax returns (and, to the extent they are provided, sworn Financial Disclosure Statements) and further instructions to be issued by this Court regarding the method of calculating distribution of any funds to investors, the Monitor shall calculate the Annual Restitution Payments to be paid by the Defendant for that year and the specific amounts payable to each investor listed in the Commission Letter. On or before June 30 of each year and starting in calendar year 2004, the Monitor shall send written notice to the Defendant with instructions to pay the Annual Restitution Payments on or before July 31 of that year to an account designated by the Monitor, or if the Defendant's restitution obligation has been satisfied or otherwise discharged, the amount of civil monetary penalty to be paid in accordance with the payment instructions in paragraphs 3 and 4 of this section. If the Monitor determines that an Annual Restitution Payment is due, then the Monitor will increase the amount of the remaining restitution payment by post-judgment interest calculated to the date of the payment based on the total remaining restitution obligation, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by defendants to the investors/creditors in the appropriate amounts listed in the Commission Letter. Should the amount of funds available fail to exceed $10,000, the Monitor may decide to defer distribution. If at the end of the ten-year payment period, any amount of the Annual Restitution Payments of Defendant has not been distributed, that amount shall instead be immediately paid and applied as a payment to Defendant's civil monetary penalty obligation as provided below in paragraphs 3 and 4.

3. <u>Civil Monetary Penalty</u>: Defendant shall pay a civil monetary penalty of $8,220,860. He shall be given one dollar credit toward payment of the civil monetary penalty for each dollar he pays toward restitution. If the Defendant has not paid the entire restitution amount by the end of the ten-year restitution period, the remaining and corresponding civil monetary penalty amount shall remain due and owing. Defendant shall pay such civil monetary penalty, not to the Monitor, but by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, under cover of a letter that identifies Defendant and the name and docket number of the proceeding; Defendant shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581.

4. <u>Payment Plan</u>: The Annual Restitution Payments shall be calculated as follows:

| (a) Where Adjusted Gross Income Plus Net Cash Receipts Total: | <u>Percent of Total to be Paid By Defendant is</u>: |
|---|---|
| Under $25,000 | 0% |
| $25,000 up to and including $50,000 | 20% of the amount between $25,000 and $50,000 |
| $50,000 up to and including $100,000 | $5,000 (20% of $25,000) plus 30% of the amount between $50,000 and $100,000 |
| Above $100,000 | $20,000 (20% of $25,000 plus 30% of $50,000) plus 40% of the amount above $100,000 |

9

(b) Defendant shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to the restitution and civil monetary penalty payments. He will cooperate fully with the Monitor and the Commission in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning himself as may be required by the Commission and/or the Monitor. Furthermore, Defendant shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

5. <u>Third-Party Beneficiaries</u>: Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of the individuals identified in the Commission Letter is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution amount which has not been paid by Defendant.

6. <u>Collateral Agreements</u>: Defendant shall immediately notify the Monitor and the Commission if he makes any agreement with any investor/creditor obligating him to make payments outside of this Order. Defendant shall also provide immediate evidence to the Court, the Monitor and to the Commission of any payments made pursuant to such agreement. Upon being notified of any payments made by Defendant to investors/creditors outside of this Order, and receiving evidence of such payments, the Commission/Monitor shall reduce and offset, on a dollar for dollar basis, Defendant's obligations to specified investors/creditors, on an annual basis.

7. <u>Transfer of Assets</u>: Defendant shall not transfer or cause others to transfer funds or other property owned by Defendant to the custody, possession, or control of any other person for the purpose of concealing such funds from the Court, the Commission, the Monitor or any investor/creditor until his restitution obligation and civil monetary penalty have been paid in full.

8. <u>Default</u>: Any failure by Defendant to carry out any of the terms, conditions or obligations under any paragraph of this Order shall constitute an Event of Default. If any Event of Default occurs, the Commission (or its designee) shall be entitled to:

(a) an order requiring immediate payment of any unpaid restitution obligation, and/or civil monetary penalty, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the restitution and/or civil monetary penalty amount set forth above; and/or

(b) move the Court for imposition of all other available remedies, including, but not limited to, an order holding Defendant in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Defendant failed to make any Annual Restitution Payment and/or civil monetary penalty payment when due, Defendant will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Defendant's consent to this Order or while this Order remains in effect. The only issue that Defendant may raise in defense is whether he made the Annual Restitution Payment and/or civil monetary penalty payment in accordance with this Order. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution and/or civil monetary penalty set forth above, or any acceptance by the Commission of partial payment of the restitution obligation and/or civil monetary penalty made by Defendant, shall not be deemed a waiver of the Commission's right to require Defendant to make further payments pursuant to the payment plan set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty.

11

9. Based upon Defendant's sworn representations in his Financial Disclosure Statement dated September 23, 2003, and other evidence provided by Defendant, the Court herein is not ordering immediate payment of the entire restitution obligation and civil monetary penalty. This determination is contingent upon the accuracy and completeness of Defendant's Financial Disclosure Statement and other evidence provided by Defendant regarding his financial condition. If at any time following the entry of this Order, the Commission obtains information indicating that Defendant's representations concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and with prior notice to Defendant, petition this Court for an order requiring him to make immediate payment of his entire restitution obligation and/or civil monetary penalty, or of any portion thereof, the amount of which shall be determined by the Commission. In connection with any such petition, the only issues shall be whether the financial information provided by Defendant was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Defendant to pay funds or assets, directing the forfeiture of any assets, or imposing sanctions for contempt of this Order, and the Commission may also request additional discovery. Defendant may not, by way of defense to such petition, challenge the validity of this Order, contest the allegations in the Complaint filed by the Commission, or assert that payment of restitution or civil monetary penalty should not be ordered. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the restitution obligation or the full amount of civil monetary penalty,

such motion will not be deemed a waiver of the Commission's right to require Defendant to make further payment pursuant to the payment plans set forth above.

## VI. Miscellaneous Provisions

1. <u>Notices</u>: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Regional Counsel
> Division of Enforcement - Central Region
> Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illinois 60661

Notice to Monitor:

> Daniel A. Driscoll
> Executive Vice President
> National Futures Association
> 200 West Madison Street
> Chicago, Illinois 60606

Notice to Defendant:

> Charles G. Mady                     Scott E. Early, Esq.
> 18028 Peninsula Way                 Foley & Lardner
> Northville, Michigan 48167          321 North Clark Street, Suite 2800
>                                     Chicago, Illinois 60610

In the event that Defendant changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of his new number(s) and/or address(es) to the Monitor and to the Commission within twenty (20) calendar days thereof.

2. <u>Entire Agreement and Amendments</u>: This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify

13

this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

3. <u>Invalidation</u>: If any provision of this Order, or the application of any provisions or circumstances is held invalid, the remainder of the Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

4. <u>Waiver</u>: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be construed as a further or continuing waiver of a breach of any other provision of this Order.

5. <u>Acknowledgements</u>: Upon being served with copies of this Order after entry by the Court, Defendant shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven days. Upon being served with copies of this Order after entry by this Court, the Commission shall serve a copy of the Order upon the Monitor and all persons identified in the Commission Letter within seven days.

6. <u>Release of all Liens</u>: Upon being served with the acknowledgments listed in paragraph 5 above, and following the distribution of the existing receivership estate to the individuals listed in the Commission Letter, any and all freeze orders shall be dissolved and the Commission shall release any and all remaining liens held on any or all property owned by Defendant within twenty (20) calendar days.

7. <u>Modifications of the Powers and Duties of the Court-Appointed Receiver</u>. This Order shall supercede the Amended Agreed Order Appointing Receiver ("Agreed Order")

entered on September 6, 2002, (docket # 24) and this Order shall direct, and expressly limit the powers of, the Receiver as follows:

> (a) On behalf of Defendant, $164,969.93 shall be submitted to the receivership estate prior to the entry of this Order for full and complete settlement of all claims made by the Receiver against Defendant's interest in Defendant's personal residence located at 18028 Peninsula Way, Northville Township, Michigan 48167; and
>
> (b) Within twenty (20) days from the entry of this Order, the Receiver shall distribute the entire existing receivership estate to the individuals in the Commission Letter on a pro rata basis.

Nothing in this Order should be construed to in any way limit the ability or authority of the Receiver to distribute the proceeds of the existing receivership estate to the individuals listed in the Commission Letter or to the Monitor in accordance with this Order. The receivership shall terminate upon distribution of the receivership estate.

8. <u>Release of Receiver from Liability</u>. Defendant, individually and on behalf of Mady Futures, Inc., releases and discharges the Receiver from any claims, demands and causes of action of any nature whatsoever, including but not limited to any claims arising out of or in any way relating to the Receiver's liquidation of Defendant's assets, or administration of the receivership.

9. <u>Jurisdiction</u>. This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action. The Complaint is dismissed with prejudice upon entry of this Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order of Permanent Injunction and Other Equitable Relief and a Civil Monetary Penalty Against Defendant Charles G. Mady.

Done and ordered on this 6th day of November, 2003.

*Victoria A. Roberts*
UNITED STATES DISTRICT JUDGE

We agree to the entry of this Order.

For the Plaintiff:

Clifford Histed, Lead Trial Attorney
Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0532
(312) 596-0714 (facsimile)

For the Defendant:

Charles G. Mady, Defendant

Scott E. Early, Esq., Counsel for Defendant
Foley & Lardner
321 North Clark Street, Suite 2800
Chicago, Illinois 60610
(312) 832-4352
(312) 755-1925 (facsimile)